MAURICE GINNA, as ADMINISTRATOR, ETC., OF JOHN GINNA, DECEASED, RESPONDENT, *v.* THE SECOND AVENUE RAILROAD COMPANY, APPELLANT.

*Negligence — riding on platform of street car — proximate cause of death.*

Where a passenger upon a street car in the city of New York, being unable to obtain a seat in the interior of the car, remains standing upon the platform thereof, he is not guilty of such contributory negligence as prevents him from recovering damages for injuries sustained by him, in being thrown from the car in consequence of the negligence of the driver thereof.

By his fall from the car the arm of the deceased was broken above the elbow, the broken fragments of the bone protruding through the skin and resulting in

the development of a poisonous discharge, which, being absorbed by the blood, caused his death. *Held*, that the wrongful act of the defendant in occasioning the wound was the cause of his death within the meaning of the statute, and that the defendant was liable for the damages occasioned thereby.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Austen G. Fox* and *Waldo Hutchings*, for the appellant. The plaintiff's intestate was guilty of negligence that contributed to the injury he received, and the complaint should have been dismissed. (*Clarke* v. *The Eighth Ave. R. R. Co.*, 36 N. Y., 136; *Hickey* v. *Boston and L. R. R. Co.*, 14 Allen, 421.) When it appears that a passenger is riding upon a car in a place of hazard and danger, his negligence is *prima facie* proved, and the *onus* is upon him to rebut the presumption. (*Clarke* v. *The Eighth Ave. R. R. Co.*, 36 N. Y., 136.) The front platform of a horse car is a place of hazard and danger. (*Solomon* v. *Cent. Park, etc., R. R. Co.*, 1 Swee., 298.) The motion to dismiss the complaint on the ground that the plaintiff had failed to prove a cause of action, and the motion for a new trial, should have been granted. It was not enough to show that the deceased was injured by the negligence of the defendants and that his death occurred three weeks thereafter, especially as the only injury he sustained was a broken arm, but it was necessary to show that the injury the deceased received, and that alone, directly caused his death. It was pyaemia that caused the death; and the neglect in not caring properly for the open wound and the foul discharge therefrom that produced the pyaemia. So far from showing that the defendant's negligence was the sole and direct cause of the death of the deceased, the testimony shows that the jolt of the car, the falling off the edge of the platform and the breaking of the arm was each one of a series of events that ended, a little over three weeks later, in the death of the deceased; but that his death was no more the necessary, natural or even probable result of any one of these events than it was of his starting to go to the temperance meeting, on his way to which he fell off the platform of the defendant's car. (*Ryan*

v. *N. Y. C. R. R. Co.*, 35 N. Y., 210; *Morrison* v. *Davis*, 8 Harris [Penn.], 171.) Death is not a necessary or usual result of a broken arm. That it is possible cannot be denied, but common experience teaches us that it is very unfrequent.

*O. P. Buell*, for the respondent. Whether the injury resulting in John Ginna's death was caused by defendant's negligence, and whether he himself was chargeable with contributory negligence, were questions properly submitted to the jury and their decision thereon ought not to be disturbed. (*Bernhard* v. *Rens. and Sar. R. R. Co.*, 1 Abb. Ct. of App. Dec., 13; *Salter* v. *Utica, etc., R. R. Co.*, 59 N. Y., 631; *Weber* v. *N. Y. Cent., etc., R. R. Co.*, 58 id., 451; *Thurber* v. *Harlem, etc., R. R. Co.*, 60 id., 326, and cases cited; 2 Redf. on Railways [4th ed.], 231; 17 Wall., 657.) It is not negligence *per se*, and in all cases and under all circumstances, for a passenger to ride standing on the platform of a car. It was not negligence in this case. (*Clarke* v. *Eighth Ave. R. R. Co.*, 36 N. Y., 135; *Willis* v. *Long Island R. R. Co.*, 34 id., 670; *Spooner* v. *Brooklyn R. R. Co.*, 54 id., 230; *Hadencamp* v. *Second Ave. R. R. Co.*, 1 Swee., 490; *Edgerton* v. *N. Y. and Harlem R. R. Co.*, 39 N. Y., 227; *Meeser* v. *Lynn and Boston R. R. Co.*, 8 Allen, 234; *Burns* v. *Bellefontaine R. R. Co.*, 50 Mo., 139.)

DANIELS, J. :

The plaintiff who, upon the argument of these appeals, was admitted to have been properly appointed administrator, prosecuted this action for the recovery of damages arising out of the death of his minor son, which was alleged to have been caused by the negligent act of the defendant's servants. The facts appeared by evidence uncontradicted, and in such a manner as to leave them open to but very little if any controversy. The driver of the car testified that the deceased "got on at Thirty-third street; crowded inside; the boy got on, and in the first place he looked in through the door; there was a lady standing up against the door, and he then turned with his back to the car; I supposed he had hold on the back; whether he had hold of the railing, I could not say; he stood a little to the left of me on the platform, inside of the step;" there were three or four others also standing upon the platform.

The car proceeded in this manner until it reached a switch, which was not known to the driver, between First and Houston streets; he was then driving at the rate of six miles an hour, or at a slightly higher rate of speed; the switch had been left open, so that the car, instead of following the main track, would run upon that; and when it was reached, the horses continued on the line of the main track, and the car took the switch; that produced a violent jolt or shock, which threw nearly all the persons riding upon the platform off into the street; by the fall the deceased fractured his arm, which was followed by a disease resulting, three weeks afterwards, in his death. The driver had been employed in the capacity in which he acted, from November until March, and stated that it was the practice to walk slow where there was a switch, and that he would not have driven so fast if he had known one to have been at that point. This evidence was further sustained by a witness, who also rode upon the platform. He testified that there was room for him to stand inside, but not for him to sit, and he described the accident substantially in the same way as the driver had previously done. Under these circumstances, it was quite evident that it was the result of carelessness and incompetency on the part of the driver. To drive along a public avenue at the rate of speed mentioned by the driver, at a point where a switch was maintained, which was liable to be opened by passing cars and other vehicles, upon which, when opened, the car would inevitably be propelled, without even the knowledge on his part of its existence, presented a clear case of negligence, falling, if any thing, but little below positive recklessness. That was practically conceded by the evidence of the driver, when he said that he would have gone slow if he knew that a switch existed there. The judge, however, left the question of negligence to the jury, commenting, at the same time, upon a portion of it in such terms as indicated his opinion to be the same as that which has just been expressed. And to that intimation, concerning one of the facts, the defendant's counsel excepted. But the exception cannot be maintained, for the reason that what was said in this respect was fully justified by the evidence, which was without conflict on this part of the case. All that was said on this subject which the counsel considered exceptional, was the remark that the driver did not appear to be an

experienced person in that occupation. The learned justice said: "How long he had been in the habit of driving a car, or if he had ever been in the habit of driving one, there is no evidence before you." It was not intended by this to be denied that he had driven as he said he did, from November to March, but simply to intimate to the jury that he was not a practiced or habitual driver; and that had been substantially stated by the witness himself, who said that his trade was that of a baker, and he had never driven a car before. The more substantial part of the controversy related to the position and conduct of the deceased, and what was said in that connection by the learned justice in the charge given to the jury. It was urged in the defendant's behalf that negligence appeared on the part of the deceased, by proof of the fact that he rode upon the platform at the time of the accident; but the court declined to adopt that view and submitted the question to the jury, for them to decide it under the circumstances appearing from the evidence. The portion of the charge upon this subject contained intimations, which indicated the existence of an opinion that the deceased could not be charged with negligence from the mere fact of riding upon the platform when the inside of the car was full; but in that proposition the learned justice was precisely in accord with the established authorities. (*Ward* v. *Central Park, etc., R. R. Co.*, 42 How., 289; *Clark* v. *Eighth Ave. R. R. Co.*, 36 N. Y., 135; *Willis* v. *Long Island R. R. Co.*, 34 id., 670; *Spooner* v. *Brooklyn R. R. Co.*, 54 id., 230.)

In the outset it was remarked, by way of admonition to the jury, that "whatever might be said in regard to any of the facts that are in dispute, you must use your own judgment, and not mine, as what I shall say is merely to illustrate points of law that are in the case, leaving to you the decision of the questions of fact." And that was in no manner afterward retracted or withdrawn. But the following observations, which, in some respects, were more general than was required, either by the decisions of the courts or the evidence in the case, were made in the course of the charge: "It is said, with some truth, by members of the bar, that the Court of Appeals have gone a great way in excusing railroad corporations for accidents that have occurred, but until the Court of Appeals shall decide to what extent cars may be packed without allowing men to stand on the front or

rear platform, whose fare they have taken, I am not prepared in this case to charge, as matter of law, that merely standing on the front or rear platform on the part of the deceased was negligence. I am disposed to submit to you as a question of fact, for you to say whether, under the circumstances, that was a negligence on his part contributing to the accident by which he sustained this injury. How far the Court of Appeals shall finally determine that a car may be packed without allowing men to stand on the outside, it is not for me to say at the present time. I do not think that they have gone to the extent of saying that a car must be packed so full that mechanical pressure would be required to get any more in, before allowing men to stand outside."

To this statement a general exception was taken by the defendant's counsel. The proposition advanced was sound, for it left the jury to determine whether, in the condition in which the car was when the deceased took passage upon it, he was negligent in remaining as he did upon the platform. If he could not conveniently enter it, he certainly was not negligent, and there was evidence in the case tending to warrant that view. The Court of Appeals has not gone so far as to hold that in such a case the passenger will ride at his own peril by standing upon the platform. But it has been otherwise held that upon a train propelled by steam, and ordinarily traveling at a much higher rate of speed than street cars, negligence will not be attributable to the passenger injured, from the mere fact that the injury occurred while he was riding upon the platform when a seat could not be obtained inside the car. And there was no apparent reason for supposing that the authority upholding that proposition would be disregarded or overruled by any subsequent decision on the same subject. It was, on the contrary, to be supposed that street railway companies would be held liable to the observance of the same rule; and as they are run at less hazard and risk, in the way of accidents to passengers, they are certainly entitled to no more favorable consideration, and they have received no more in the administration of the law by the courts. If further instructions were deemed necessary by way of explanation upon this subject they should have been, but were not, requested.

The defendant's counsel, in like manner, excepted to the statement made, that the jury had a right to infer from the evidence of

the driver, that the deceased held on to the iron rail at the end of the car to keep on the platform. That had been stated by the driver without objection to it, as an inference he deduced from the fact that the deceased, after looking into the car, turned his back to the end of it. The facts themselves did appear from the evidence he gave. The deceased stood with his back to the car, which was a position warranting the supposition that he would take hold of the railing placed there to steady and maintain himself in his position, as people usually do when they can, who are riding upon the platform of a street car. The jury could justly infer from these facts that such was the position in which the deceased had placed himself, and that was all that was really held by the court.

It was further added upon this subject: "I submit to you the question whether the position of the deceased, under the circumstances, contributed in any way to the accident by which this injury was sustained? That question I feel disposed to leave to you as a question of fact, not being prepared at the present time to say that mechanical pressure is needed to fill a car before a man can stand on the platform." That was excepted to by the defendant's counsel. But as the proposition contained in the statement was as favorable to the defendant as it had any right to require, the exception cannot be sustained. It was probably intended by what was said to repeat only what had before been stated, which was that the plaintiff could not recover if the deceased was unnecessarily and negligently riding on the platform of the car; it was in that sense that it must have been understood by the jury, for if they had followed its literal effect they would necessarily have found a verdict for the defendant, inasmuch as it was clear that the position of the deceased did contribute to the production of his injury. In that respect the case was too strongly stated in the defendant's favor.

The court also stated that the question of damages was entirely within the judgment of the jury, and to that an exception was taken by the defendant's counsel. The statement was entirely accurate and no explanation was required to be added to it. For both reasons the exceptions must be overruled.

Under the evidence which was given, all these points were disposed of properly by the court. If more was said than was

required in some respects, it was not to the injury of the defendant. The case was a proper one for the jury, and their verdict cannot be set aside as unwarranted.     The evidence showed that the deceased sustained his injury by the carelessness of the defendant's servant.    He was required to stand in farther from the edge of the platform on two occasions by the conductor, but he was then nearly a foot from the steps, and it does not appear that he could conveniently have placed himself at a safe position while the other persons besides himself were also riding upon the platform.    These, however, were matters appropriately left to the determination of the jury, and it must be assumed now that they were properly considered and decided by them.

The deceased was shown to have been a remarkably temperate, industrious, healthy and intelligent young man of the age of eighteen years, and the verdict, which was for the sum of $3,000, was not under those circumstances disproportioned to the injury caused by his death to his next of kin.

By the fall his arm was fractured above the elbow, the broken fragments of the bones protruding and wounding the flesh and the skin.    That resulted in the development of a poisonous discharge which remaining in the wound was absorbed by the blood and in three weeks afterwards he died from the effects of the poison. It was not claimed upon the trial that the injury had been improperly treated or that death was not the result of it.    And the position could not have been reasonably taken in view of the evidence of the physician, for he testified that the bones had been put in their proper position, and that the physicians of the hospital of which the witness was one, would probably have treated the injury in the same way it had been done before the deceased went there.    More attentive treatment might have saved the life of the young man, but its necessity was not apparently suspected. He was subjected to that which was followed and designed to be proper by the wrongful act of the defendant.    That was the cause which placed his life in jeopardy, because it produced the wound whose poisonous discharges resulted in his death.    No other wrong or misconduct than that of the defendant was shown to have intervened; that caused his death, within the meaning of the provisions of the statute relating to this class of cases, by producing the bodily

condition rendering it under the circumstances inevitable. It was the operative as well as the proximate cause of death, and that was sufficient to render the defendant liable.

The judgment and the order should be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Ordered accordingly.